MORGAN, LEWIS & BOCKIUS LLP
Brian Berry, Bar No. 229893
Sarah Zenewicz, Bar No. 258068
Grace Johnson, Bar No. 348394
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:   +1.415.442.1001
brian.berry@morganlewis.com
sarah.zenewicz@morganlewis.com
grace.johnson@morganlewis.com

Attorneys for Defendant
GATE GOURMET, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK CHRIS ESTRELLA ABRAJANO, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GATE GOURMET, INC.; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT GATE GOURMET, INC.'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**<br><br>[San Mateo County Superior Court Case No. 24CIV00929]<br><br>[28 U.S.C. §§ 1332, 1441, 1446 and 1453] |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Gate Gourmet, Inc. ("Gate Gourmet") hereby removes the above-entitled action from the San Mateo Superior Court to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. This removal is based on the following grounds:

I.  **PROCEDURAL BACKGROUND**

1. On February 16, 2024, Plaintiff Mark Chris Estrella Abrajano ("Plaintiff") filed a putative class action complaint in the San Mateo Superior Court, entitled *Mark Chris Estrella Abrajano, an individual and on behalf of all others similarly situated vs. Gate Gourmet, Inc.; and Does 1 through 25, inclusive* (the "Complaint").

2. On May 29, 2024, Plaintiff served copies of the Summons and Complaint on the registered agent for Gate Gourmet. True and correct copies of Plaintiff's Summons and Complaint are attached hereto as **Exhibit A**.

3. Plaintiff seeks to represent the following class of persons employed by Gate Gourmet: "all current and former hourly-paid and/or non-exempt employees who worked for Defendants in the State of California at any time during the period from four years prior to the date of filing of this Complaint until final judgment" (the "Class"). Compl. ¶ 24.

4. On behalf of himself and the Class, Plaintiff alleges nine causes of action. They are: (1) violation of California Labor Code sections 1194, 1197, and 1197.1 (minimum wages); (2) violation of California Labor Code sections 510 and 1198 (unpaid overtime); (3) violation of California Labor Code section 226.7 and 512(a) (meal break violations); (4) violation of California Labor Code section 226.7 (rest break violations); (5) violations of California Labor Code section 204 and 210 (wages not timely paid during employment); (6) violation of California Labor Code section 226(a) (wage statement violations); (7) violation of California Labor Code sections 201, 202 and 203 (untimely final wages); (8) violation of California Labor Code sections 2800 and 2802 (failure to reimburse necessary business expenses); and (9) violation of California

Business and Professions Code section 17200, *et seq*.

5. The documents attached hereto as **Exhibit B** constitute all the process, pleadings, and orders filed in this action in the Superior Court of the State of California for the County of San Mateo.

6. **Exhibits A** and **B** constitute all the pleadings, process, and orders served upon or filed by Gate Gourmet in the Superior Court action.

## II. REMOVAL IS TIMELY

7. This Notice of Removal is timely filed, pursuant to 28 U.S.C. section 1446(b), in that it is filed within 30 days of service on Gate Gourmet. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining that the 30-day period for removal runs from the service of the summons and complaint).

8. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

9. Plaintiff brings this action on behalf of a putative Class. Compl. ¶ 1. Removal based upon Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between the named Plaintiff (and putative Class members) and Gate Gourmet; (ii) the aggregate number of putative Class members in all proposed classes is 100 or greater; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453. Although Gate Gourmet denies Plaintiff's factual allegations and denies that Plaintiff or the Class he purports to represent are entitled to the relief requested (or any relief whatsoever), based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case.

### A. Minimal Diversity Of Citizenship Exists.

10. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, one putative class member is a citizen of a state different

from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.,* 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

### (i) Plaintiff Is A Citizen Of California.

11. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.,* 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986)). Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC,* 652 F.3d 340, 395 (3d Cir. 2011).

12. In the Complaint, Plaintiff alleges that he "is and was an individual residing in San Francisco County in the State of California." Compl. ¶ 9. Plaintiff is a current employee of Gate Gourmet in California and his employment records show that at all times during his employment, he has represented to Gate Gourmet that his home address is in California. Declaration of Elaine Dray ("Dray Dec."), ¶ 5. In addition, the putative Class that Plaintiff seeks to represent is comprised of only persons employed within the State of California. Compl. ¶ 24.

### (ii) Gate Gourmet Is A Citizen Of Delaware And Virginia.

13. Pursuant to 28 U.S.C. section 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The appropriate test to determine a corporation's principal place of business is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.*

14. Gate Gourmet is incorporated under the laws of the State of Delaware, with its

1  principal place of business in Reston, Virginia. Dray Dec., ¶¶ 3, 4. Gate Gourmet's principal
2  place of business is in Reston, Virginia because its "nerve center" is located in Reston Virginia.
3  Specifically, the Reston corporate office is where Gate Gourmet's senior management and high
4  level officers manage its executive and administrative operations, including operations relating to
5  administering company-wide policies and procedures, legal affairs, and general business
6  operations. *Id.* at ¶ 4.

7   15.   Accordingly, at all relevant times, Gate Gourmet has been a citizen of the State of Delaware and Virginia.

   **(iii)   Doe Defendants' Citizenship Must Be Disregarded.**

   16.   For purposes of determining diversity for removal, the existence of "Doe" defendants are immaterial. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *see also Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("The citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (holding that for removal purposes, the citizenship of defendants sued under fictitious names are disregarded).

   17.   Accordingly, because Plaintiff is a citizen of California and Gate Gourmet is a citizen of Delaware and Virginia, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity").

   **B.   The Putative Class Has More Than 100 Members.**

   18.   Based on Plaintiff's Class definition, the putative Class includes more than 100 members. Specifically, the putative Class is defined to include all current and former non-exempt employees of Gate Gourmet working in the State of California since February 16, 2020. Compl. ¶ 24). There are more than 4,508 such individuals. Dray Decl., ¶ 7.

   **C.   The Amount In Controversy Exceeds Five Million Dollars.**

   19.   Pursuant to CAFA, the claims of the individual members in a class action are

aggregated to determine if the amount in controversy exceeds $5 million, exclusive of interest and costs.  28 U.S.C. § 1332(d)(6).

20.     A removing party need only show that it is more likely than not that the amount in controversy exceeds $5 million.  *See Singer v. State Farm Mut. Auto Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997).

21.     Gate Gourmet's burden to establish the amount in controversy is the preponderance of the evidence standard.  *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547 (2014); *see also Jordan v. Nationstar Mortg., LLC,* 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases).  A removing party that invokes CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee,* 135 S. Ct. at 554.  "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."  Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citations omitted).

22.     A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations."  *Oda v. Gucci Am., Inc.,* 2015 WL 93335, at *5 (C.D. Cal. Jan 7, 2015); *see Sanchez v. Russell Sigler, Inc.,* 2015 WL 12765359, at *2 (C.D. Cal. April 28, 2015) ("[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." (citation omitted); *see also LaCross v. KnightTransp. Inc.,* 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy").  The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what amount, if any, a defendant may actually owe.  *LaCross,* 775 F.3d at 1202 (internal citation omitted) (explaining that courts are directed "to first look to the complaint in determining the

amount in controversy.").

23. Under *Dart Cherokee,* a removing defendant is not required to submit evidence in support of its removal allegations. *Roa v. TS Staffing Servs, Inc.,* 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015). However, as demonstrated below, Gate Gourmet has both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5 million, and the Court therefore has jurisdiction pursuant to CAFA. As demonstrated below, when the claims of the Class are aggregated, their claims, including alleged statutory attorneys' fees, put into controversy over $5 million. 28 U.S.C. § 1332(d)(2).

24. Although Gate Gourmet expressly denies Plaintiff's factual allegations and denies that he or the putative class that he seeks to represent are entitled to any relief, Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating claims of the putative class member as set forth in 28 U.S.C. § 1332(d)(6).[1] Based on the allegations in the Complaint, Plaintiff has put more than $5 million in controversy as demonstrated herein, and CAFA removal is appropriate.

### 1. Plaintiff's Overtime Cause of Action Places At Least $4,344,210.00 In Controversy

25. The Complaint alleges that "Plaintiff and the other class members regularly worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week and/or seven (7) consecutive days in a workweek. However, Defendants . . . willfully failed to pay all overtime wages owed to Plaintiff and the other class members." Compl. ¶ 45. Plaintiff further alleges in his Complaint that this unpaid overtime is due to, among other things, off-the-clock work, the mischaracterization of overtime as straight

---

[1] This Notice of Removal discusses the nature and amounts of damages placed in controversy by the allegations in Plaintiff's Complaint. Gate Gourmet's reference to specific damage amounts are provided solely for the purposes of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Gate Gourmet maintains that each of Plaintiff's claims is without merit and that Gate Gourmet is not liable to Plaintiff. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages whatsoever based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Gate Gourmet's] liability." *Lewis v. Verizon Communs., Inc.,* 627 F.3d 395, 400 (9th Cir. 2010).

time, and the failure to correctly calculate the regular rate of pay by failing to include all remuneration. *Id.* The Complaint alleges that this unpaid overtime is part of a "pattern and practice of wage abuse." Compl. ¶ 21. As a result, the Complaint alleges, "Plaintiff and the other class members are entitled to recover their unpaid overtime compensation, and interest, costs, and attorneys' fees." Compl. ¶ 47.

26. Based on Plaintiff's allegations that Defendant allegedly engages in a pattern and practice of failing to pay overtime to the putative class, it is plausible and reasonable to assume that Plaintiff seeks to recover at least one-half hour of unpaid overtime per week for all putative class members. *See Kastler v. Oh My Green, Inc.,* 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of unpaid minimum wages and unpaid overtime per week per class member "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations" and simply alleged a "pattern and practice" of failing to pay overtime and minimum wages). Assuming that each class member worked one-half hour of unpaid overtime per week, and using 1.5 times the Class members' average hourly pay rate of $20.54 (Dray Decl., ¶ 7) (*i.e.*, an overtime rate of $30.81 per hour, multiplied by one-half (0.5) hour, multiplied by 282,000 workweeks during the relevant period), Plaintiff's overtime wage claim places in controversy at least **$4,344,210**.

**2.    Plaintiff's Cause of Action For Failure To Provide Meal Periods Places At Least $2,896,140.00 In Controversy.**

27. Plaintiff seeks to recover meal period premiums for the putative Class based on his allegations that Defendant required employees to work "for periods longer than five (5) hours without an uninterrupted meal period of not less than (30) minutes." Compl. ¶ 53. Plaintiff further alleges that Defendant "failed to pay Plaintiff and the other class members all meal period premiums due[.]" Compl. ¶ 56.

28. Labor Code section 512(a) states that an employer must provide non-exempt employees an uninterrupted meal period of not less than 30 minutes for a work period of more than five hours. Labor Code section 226.7(b) states that if an employer fails to provide an employee a meal period in accordance with state law, the employer shall pay the employee one

additional hour at the regular rate of pay for each workday that the meal period is not provided.

29. Plaintiff also alleges that the failure to provide meal periods constitutes unfair competition within the meaning of the UCL (Compl. ¶ 87) and thus the applicable statute of limitations for the meal period claim is four years. Bus. & Prof. Code § 17208.

30. Based on Gate Gourmet's records, there are at least 4,508 members of the putative Class and they have worked at least 282,000 workweeks during the relevant period with an average pay rate of $20.54 during this period. Dray Decl., ¶ 7.

31. Gate Gourmet's calculation of the amount in controversy for Plaintiff's meal period cause of action is **$2,896,140** (which conservatively assumes one non-compliant meal period *every other work week* (*i.e.*, 141,000 workweeks during the relevant period x $20.54 meal period premium). Courts have found that an assumption of one violation *per workweek* is generally accepted as a reasonable and conservative assumption when calculating the amount in controversy for CAFA purposes. *See Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period was reasonable); *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 (same).

### 3. Plaintiff's Cause Of Action For Failure To Provide Rest Periods Places At Least $2,896,140.00 In Controversy.

32. Plaintiff also seeks to recover rest period premiums for the Class based on his allegations that "Defendants routinely required Plaintiff and the other class members to work three and one-half (3 ½) or more hours without authorizing or permitting a compliant ten (10) minute rest period per each four (4) hour period, or major fraction thereof, worked." Compl. ¶ 63. Plaintiff further alleges, "Defendants had no policy or practice to pay a premium when rest periods were missed, short, late, and/or interrupted, or otherwise failed to comply with California law, and thus Defendants failed to pay Plaintiff and the other class members the full rest period premium due[.]" Compl. ¶ 67.

33. Labor Code section 226.7(b) states that if an employer fails to provide an employee a rest period in accordance with state law, the employer shall pay the employee one additional hour at the regular rate of pay for each workday that the rest period is not provided.

34. Plaintiff also alleges that the failure to provide rest periods constitutes unfair competition within the meaning of the UCL (Compl. ¶ 87) and thus the applicable statute of limitations for the rest period claim is four years. Bus. & Prof. Code § 17208.

35. Gate Gourmet's calculation of the amount in controversy for Plaintiff's rest period cause of action is **$2,896,140** (141,000 workweeks x $20.54 rest period premium). The computation is based on the conservative assumption of a violation rate of one non-compliant rest period *every other workweek* for each Class member. An assumption of one violation *per workweek* is generally accepted as a reasonable and conservative assumption when calculation the amount in controversy for CAFA purposes. *See Chavez v*, 2019 WL 1501576, at *3; *Danielsson*, 2019 WL 7290476, at *6.

**4. Plaintiff's Cause Of Action For Failure To Timely Pay Wages Owed At Separation Places $9,454,972.00 In Controversy.**

36. Plaintiff alleges that "at the time that Plaintiff and the other class members' employment with Defendants ended, Defendants knowingly and willfully failed to pay them all wages owed[.]" Compl. ¶ 84. Plaintiff further alleges that "Plaintiff and the other class members are entitled to all available statutory penalties, including the waiting time penalties[.]" Compl. ¶ 85.

37. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca,* 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, the wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id.* at 493.

38. The statute of limitations for waiting-time penalties claims is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395, 1398 (2010).

39. Based on Gate Gourmet's records, there are at least 1,918 former employees since February 16, 2021. Dray Decl., ¶ 8.

40. Gate Gourmet's calculation of the amount in controversy for Plaintiff's waiting time penalty claim is **$9,454,972.00** (1,918 terminated class members x $20.54 average hourly rate x 8 hours per day x 30 days). The computation of the amount in controversy is based on the allegation that each one of the 1,918 terminated employees was owed but not paid at least some of their wages at termination and accrued 30 days of waiting time penalties based on those unpaid wages. It is reasonable to calculate the amount in controversy for waiting time penalties based on a 30-day penalty calculated at each former employee's daily wage rate because nothing in the Complaint supports any inference that the allegedly unpaid wages have ever been paid. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

     **5.**     **Plaintiff's Cause of Action For Failure To Furnish Accurate Wage Statements Places At Least $5,612,950.00 In Controversy.**

41. According to the Complaint, "[a]s a result of the violations set forth in detail above (failure to pay overtime, failure to pay minimum wages, meal break violations and rest break violations), Defendants intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements." Compl. ¶ 77.

42. Labor Code section 226 provides penalties of $50 for "initial" violations and $100

for all "subsequent" violations to provide the information required by the statute. Labor Code § 226(e)(1). A maximum of $4,000 in penalties may be collected for each employee. *Id.* The statute of limitations for non-compliant wage statement claims is one year. Code Civ. P. § 340(a); *Murphy v. Kenneth Cole Prods., Inc.,* 40 Cal. 4th 1094, 1120 (2007).

43. Approximately 3,102 non-exempt employees have been employed by Gate Gourmet at some point in time over the course of the relevant time period (one year prior to the filing of the original Complaint), and have received approximately 113,871 wage statements during that period. Dray Decl. ¶ 9.

44. Plaintiff alleges wage statement violations based on predicate unpaid wage, unpaid overtime, and unpaid meal and rest period premium violations, and it is reasonable to assume at least one such violation per pay period, and for purposes of removal, that each wage statement issued was non-compliant. *Kastler,* 2019 WL 5536198, at *6 ("Because the baseline assumptions of one hour of unpaid minimum wage and one hour of unpaid overtime per week are reasonable, as noted above, Defendant's calculations for wage statement violations [which assume that each wage statement was in violation of section 226] are also reasonable."); *Vasquez,* 2018 WL 327451, at *6 ("Inaccurate wage statement penalties do not depend on how many unpaid hours were worked, but whether any unpaid hours were worked."). Conservatively assuming that just *every other* wage statement received by Plaintiff and the Class is inaccurate due to at least one type of violation alleged, Plaintiff's inaccurate wage statement claim places in controversy **$5,612,950.00** (3,102 x $50 (for each employee's "initial" violation) + 57,680 x $100 (for the "subsequent" violations), with penalties as to any class member capped at $4,000).

### 6.   Plaintiff's Request For Attorneys' Fees Places At Least An Additional $1,000,000.00 In Controversy.

45. Plaintiff seeks to recover statutory attorneys' fees. Compl. ¶¶ 38, 47, Prayer for Relief. Future attorneys' fees are properly included in determining the amount in controversy. *See Fritsch v. Swift Transp. Co. of Arizona, LLC,* 899 F.3d 785, 793-794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in

11     NOTICE OF REMOVAL

controversy."). The Ninth Circuit held that future fee estimates can be based on "customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy. *Id.* at 795, 796, fn. 6. Using 25% of the amount in controversy as a benchmark for attorneys' fees equates to $6,343,508.00 in fees (25% of $25,374,032.00).

46. Even if the 25% benchmark is not used, it is reasonable to assume that Plaintiff's potential future attorneys' fees place at least an additional **$1,000,000** in controversy. Attorneys from Plaintiff's counsel's firm previously presented to courts in fee motions in class actions that they have hourly rates of $695. *Theresa Bendorf v. Sea World, LLC, et al.*, Decl. of S. Emi Minnie in Supp. of Plaintiff Theresa Bendorf's Notice of Motion and Mot. to Remand Pursuant to 28 U.S.C. § 1447, Doc. 6-3 at 3 (S.D. Cal. Dec. 22, 2021). Based on just a $600 per hour rate, it would only take 1,667 billable hours to reach at least $1,000,000 in attorneys' fees in this action. Litigating a wage and hour class action through discovery, class certification, dispositive motions, and trial would easily exceed 1,667 hours. *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (granting a total of $15,200,002.90 in attorneys' fees based on a total of 10,595.8 hours at rates ranging from $300 to $900 per hours following a 16-day class action trial); *Ibarra v. Wells Fargo Bank, N.A.*, 2018 WL 5276295, at *7 (C.D. Cal. Sept. 28, 2018) (awarded $1,967,253.76 in attorneys' fees to the plaintiffs following summary judgment in their favor where class counsel had spent 1,805.55 hours litigating at rates ranging from $325 to $775); *In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (awarding $1,156,821.12 in fees following trial based on 4,016.74 hours billed and a blended rate of only $288 per hour).

### 7. Summary Of The Amount Placed in Controversy

47. As described above, a reasonable estimate of the amount placed in controversy by Plaintiff's causes of action for unpaid minimum wage, meal period violations, rest period violations, and waiting time penalties exceed $5,000,000 – see the chart below for reference:

| Cause of Action | Amount in Controversy |
|---|---|
| Failure to Pay Overtime | $4,344,210.00 |
| Failure to Provide Meal Periods | $2,896,140.00 |
| Failure to Provide Rest Periods | $2,896,140.00 |
| Failure to Timely Pay Wages at Separation | $9,454,972.00 |
| Failure to Furnish Accurate Wage Statements | $5,612,950.00 |
| Attorneys' Fees | $1,000,000.00 |
| **Total** | **$26,204,412.00** |

48.  As a result, Gate Gourmet has shown by a preponderance of the evidence that the amount placed in controversy by Plaintiff's causes of action exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

**8.  Plaintiff's Other Causes Of Action Put Additional Amounts In Controversy, Further Exceeding the CAFA Threshold.**

49.  As shown above, using reasonable assumptions grounded in the Complaint's allegations, Gate Gourmet has demonstrated that Plaintiff's claims place well over $5 million in controversy, even without including the amounts placed in controversy by Plaintiff's causes of action for unpaid overtime, failure to timely pay wages, and failure to indemnify thus further exceeding the CAFA jurisdictional threshold.

**IV.  THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED**

50.  As set forth above, this Notice of Removal is filed within thirty days of service of the Summons and Complaint upon Gate Gourmet.

51.  Gate Gourmet will promptly serve Plaintiff with this Notice of Removal and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

52.  Venue is proper in this district, pursuant to 28 U.S.C. § 1441(a), because it embraces the county in which the removed action was pending.

53. **Exhibits A** and **B** constitutes all the process, pleadings, and orders in this case.

54. The prerequisites for removal under 28 U.S.C. §§ 1441 and 1453 have been met.

55. Because this Court has original jurisdiction under the provisions of 28 U.S.C. §1332(d), removal of this action is proper pursuant to 28 U.S.C. § 1441.

56. As required by Federal Rule of Civil Procedure 7.1, Gate Gourmet concurrently filed its Corporate Disclosure Statement.

57. If any question arises as to the propriety of the removal of this action, Gate Gourmet requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

58. **WHEREFORE,** Defendant Gate Gourmet, Inc., desiring to remove this case to the United States District Court for the Northern District of California, pray that the filing of this Notice of Removal shall effect the removal of the suit to this Court.

Dated:  June 27, 2024                          MORGAN, LEWIS & BOCKIUS LLP

By:   */s/ Brian Berry*
Brian Berry
Sarah Zenewicz
Grace Johnson

Attorneys for Defendant
GATE GOURMET, INC.